UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

PINNACLE SURETY SERVICES, INC.,                                    Plaintiff,

v.                                                   Civil Action No. 3:15-cv-364-DJH

MANION STIGGER, LLP, et al.,                                      Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

When financial-services companies hire employees away from competitors, litigation often follows. Here, Pinnacle hired Todd Loehnert and Brian Ayres away from Wells Fargo, resulting in lawsuits. Pinnacle now claims that the lawyers it retained to represent Loehnert, Ayres, and itself in those lawsuits breached their obligations to Pinnacle when they later assisted Loehnert and Ayres in leaving Pinnacle and establishing a competing business. Defendants have moved to dismiss, for leave to file excess pages, and to stay discovery until the Court rules on the motion to dismiss. (Docket No. 57; D.N. 68; D.N. 58) For the reasons set forth below, the motion for leave to file excess pages will be granted; the motion to dismiss will be granted in part and denied in part; and the motion to stay discovery will be denied as moot.

## I.    BACKGROUND

The following facts are set out in the complaint and accepted as true for purposes of the motion to dismiss. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Plaintiff Pinnacle is a California surety-bond company. (D.N. 53, PageID # 352) It opened an office in Louisville, Kentucky, in 2013. (*Id.*) Pinnacle contracted with Todd Loehnert and Brian Ayres to open the Louisville office. (*Id.*) Loehnert and Ayres left Wells Fargo in order to join Pinnacle. (*Id.*) Wells Fargo then sued Loehnert and Ayres for breaching their employment agreements.

1

(*Id.*)  Wells Fargo also sued Pinnacle.  (*Id.*)  Defendants G. Bruce Stigger and Rex H. Elliott and their respective law firms, Defendants Manion Stigger, LLP and Cooper & Elliott, LLC, jointly represented Loehnert, Ayres, and Pinnacle in the Wells Fargo litigation.  (*Id.*, PageID # 352-53)  The Wells Fargo lawsuit settled, and the final settlement payment from Loehnert, Ayres, and Pinnacle to Wells Fargo was due on June 4, 2014.  (*Id.*, PageID # 353)

The parties dispute the moment at which the attorney-client relationship between Pinnacle and Defendants ended.  Pinnacle argues that it continued until at least June 4, 2014, when payment was due.  (*Id.*)  Defendants, however, argue that the relationship ended on June 10, 2013, the day the settlement agreement was reached and the case was dismissed.  (D.N. 57-2, PageID # 500-01)

During their joint representation of Loehnert, Ayres, and Pinnacle, Defendants allegedly encouraged and assisted Loehnert and Ayres in breaching their employment agreement with Pinnacle.  (D.N. 53, PageID # 354-55)  Pinnacle further alleges that Defendants helped Loehnert and Ayres form their own business, L.A. Surety LLC, to compete with Pinnacle.  (*Id.*)  These alleged actions form the basis of the present lawsuit, in which Pinnacle asserts claims against Defendants for legal malpractice, breach of fiduciary duty, fraudulent concealment, intentional interference with a contractual relationship, civil conspiracy, aiding and abetting a breach of fiduciary duty, constructive trust, and accounting.  (*Id.*, PageID # 359-72)

On June 9, 2014, Loehnert and Ayres, represented by Defendants, sued Pinnacle in Jefferson County Circuit Court, alleging that Pinnacle failed to pay amounts owed under a promissory note related to the Wells Fargo settlement.  (D.N. 53, PageID # 357-58; D.N. 53-3, PageID # 451)  On that same date, Pinnacle sued Loehnert and Ayres in this Court for breaching their employment agreement with Pinnacle.  (D.N. 53, PageID # 358; D.N. 57-6, PageID # 538-

39) Pinnacle removed the state-court action to federal court, and the Court consolidated the two actions. (D.N. 53, PageID # 358; D.N. 53-3, PageID # 451) Pinnacle then filed a motion to disqualify Defendants as counsel for Loehnert and Ayres, which the Court granted on November 18, 2014. (D.N. 53, PageID # 358; D.N. 53-3, PageID # 459) The Court entered an order staying this case while the parties litigated the underlying action between Pinnacle and Loehnert and Ayres. (D.N. 43) That case settled in March 2016, with the Court entering an agreed order dismissing the matter with prejudice. (D.N. 57-9; D.N. 57-10) The Court later lifted the stay, and Pinnacle filed its amended complaint against Defendants. (D.N. 52; D.N. 53)

## II.    STANDARD

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure and will not withstand a motion to dismiss. *Id.* at 679.

## III.    ANALYSIS

### A.    Liquidated-Damages Provision

Defendants argue that Pinnacle has been fully compensated for Loehnert and Ayres's decision to terminate their employment and is not entitled to additional compensation.  (D.N. 57-2, PageID # 480)  They base this argument on a liquidated-damages provision contained in the employment agreement between Pinnacle and Loehnert and Ayres.  The provision stated: "[I]f, within three years of the date of this Agreement, either Executive's employment is terminated by Pinnacle for cause or if either Executive resigns, without cause, . . . Pinnacle, in its sole discretion, may obtain $125,000, as liquidated damages from the terminated or resigning executive."  (D.N. 53-1, PageID # 407-08)  According to Defendants, Loehnert, Ayres, and L.A. Surety paid Pinnacle $300,000 in settlement of all claims asserted by Pinnacle.  (D.N. 57-2, PageID # 481; *see* D.N. 57-9)

Pinnacle asserts that Defendants have waived this argument, as well as their res judicata defense discussed below, because they "were not plead[ed] by Defendants as affirmative defenses."  (D.N. 64, PageID # 635)  However, Defendants responded to Pinnacle's complaint by filing this motion to dismiss.  (*See* D.N. 53; D.N. 57)  A defendant is permitted to respond to a complaint by filing a motion to dismiss.  *See Doss v. Lexington Fayette Urban Cty. Gov't*, No. 5:15-12-KKC, 2015 WL 4372715, at *3 (E.D. Ky. July 14, 2015).  And "[a] defendant can raise affirmative defenses in a motion to dismiss."  *White v. Corr. Med. Servs. Inc.*, No. 1:08-cv-277, 2009 WL 596473, at *4 (W.D. Mich. Mar. 6, 2009).  Defendants asserted both payment and res judicata as defenses in their memorandum of law in support of their motion to dismiss.  (*See* D.N. 57-2, PageID # 480-87)  The Court thus rejects Pinnacle's waiver argument.

In general, the Court may consider only the pleadings in ruling on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). But the Court may also consider public records without converting the motion into one for summary judgment so long as the facts to be judicially noticed are not subject to reasonable dispute. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). "Settlement agreements are documents of which a court may take judicial notice in order to determine whether future claims are barred by a previous settlement." *Valassis Commc'ns, Inc. v. News Corp.*, No. 2:13-cv-14654, 2014 WL 12585773, at *3 (E.D. Mich. July 16, 2014). Here, neither party disputes that Pinnacle settled its claims against Loehnert and Ayres for $300,000. (*See* D.N. 57-2, PageID # 481; D.N. 64, PageID # 641-42) The Court will therefore take judicial notice of the settlement agreement.

Notably, the settlement agreement expressly provides: "The Parties further agree and acknowledge that the Malpractice Action [i.e., this case] is in no way settled, compromised, resolved[,] or affected in any way by this Agreement." (D.N. 57-9, PageID # 587-88) Thus, it appears that the parties did not intend to settle the claims against Defendants when they settled the claims against Loehnert, Ayres, and L.A. Surety.

Moreover, Defendants have not shown that the liquidated-damages provision was actually enforced. In fact, Pinnacle moved to recover its liquidated damages under the employment agreement in its prior action against Loehnert, Ayres, and L.A. Surety (D.N. 57-8), but the Court denied Pinnacle's motion. *Pinnacle Surety Servs., Inc. v. Loehnert*, Case No. 3:14-cv-00425-JHM-CHL, Docket No. 48 (W.D. Ky. Aug. 25, 2015).[1] Because the liquidated-damages provision was never enforced, Pinnacle was entitled to seek its actual damages. *See*

---

[1] The Court may look to matters of public record, including records of other court actions, in ruling on a motion to dismiss. *See Eggerson v. United States*, No. 1:05-cv-594, 2006 WL 1720252, at *3 (W.D. Mich. June 22, 2016).

*Steffen v. United States*, 213 F.2d 266, 270 (6th Cir. 1954); *United Servs. Auto. Ass'n v. ADT Sec. Servs., Inc.*, 241 S.W.3d 335, 340 (Ky. Ct. App. 2006). Thus, the liquidated-damages provision does not bar Pinnacle's claims against Defendants.

### B.     Res Judicata

In addition, Defendants assert that res judicata bars Pinnacle's claims. (D.N. 57-2, PageID # 484) Specifically, they assert that Pinnacle's prior suit against Loehnert, Ayres, and L.A. Surety bars the present suit. (*Id.*, PageID # 485-87) Defendants rely on materials from the prior litigation in support of their argument. (*See id.*, PageID # 487) Because the Court may look to matters of public record, including other court actions, in ruling on a motion to dismiss, *see Eggerson*, 2006 WL 1720252, at *3, the Court will consider these materials for the purpose of resolving the preclusion issue.

As an initial matter, both parties refer to Kentucky preclusion law in their briefs. (*See* D.N. 57-2, PageID # 484-85; D.N. 64, PageID # 635-40) But the order that Defendants seek to give preclusive effect was issued by a federal court, albeit one exercising diversity jurisdiction. (*See* D.N. 57-2, PageID # 467-68; D.N. 57-10, PageID # 603; D.N. 53-1, PageID # 374-75) Jurisdiction is based upon diversity of citizenship in the present action as well. (D.N. 53, PageID # 351) The Sixth Circuit has held that federal courts "shall apply federal res judicata principles in successive federal diversity actions." *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 213-14 (6th Cir. 1996). The Court will therefore apply federal res judicata principles to determine the preclusive effect of the prior suit.

"The general rule of claim preclusion, or true res judicata, is that a valid and final judgment on a claim precludes a second action on that claim or any part of it." *Id.* at 214. "Claim preclusion applies not only to bar the parties from relitigating issues that were *actually*

litigated but also to bar them from relitigating issues that *could have been raised* in an earlier action." *Id.* The Sixth Circuit uses a four-part test for determining whether a subsequent action is barred by res judicata or claim preclusion. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006). Res judicata requires

> "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action."

*Id.* (quoting *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995)).

"Causes of action share an identity 'if they are based on substantially the same operative facts, regardless of the relief sought in each suit.'" *Old Blast, Inc. v. Operating Eng'rs Local 324 Pension Fund*, 663 F. App'x 454, 458 (6th Cir. 2016) (quoting *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 317 (2011)). The present case is based upon substantially the same facts as the prior lawsuit: Pinnacle's employment agreement with Loehnert and Ayres, the Wells Fargo litigation, Loehnert and Ayres's premature resignation from Pinnacle, Defendants' disqualification as Loehnert and Ayres's counsel, the assistance Defendants allegedly provided Loehnert and Ayres in setting up a competing business, and the damages Pinnacle suffered as a result of Loehnert and Ayres's early resignation. (*Compare* D.N. 53, PageID # 352-59, *with* D.N. 53-1, PageID # 375-86) Based upon these similar facts, the Court concludes that the identity-of-claims element is satisfied.

In the prior suit, Pinnacle sued Loehnert, Ayres, and L.A. Surety. (D.N. 53-1) In the present suit, Pinnacle asserts claims against Stigger, Elliott, and their law firms. (D.N. 53) Defendants assert that they are in privity with Loehnert and Ayres because they represented Loehnert and Ayres in the prior suit. (D.N. 57-2, PageID # 485, 487) The Sixth Circuit has held at least twice that attorneys were in privity with their clients for purposes of res judicata. *See*

*Kimball v. Orlans Assocs. P.C.*, 651 F. App'x 477, 481 (6th Cir. 2016); *Browning v. Levy*, 283 F.3d 761, 772 (6th Cir. 2002). In *Kimball*, the court held that attorney defendants were in privity with a bank concerning a mortgage foreclosure "by virtue of their position as foreclosure counsel." 651 F. App'x at 481. In *Browning*, the court held that debtor's counsel was in privity with a debtor, despite the fact that it had been replaced as debtor's counsel only one month after the bankruptcy petition was filed, because debtor's counsel "participat[ed] in the proceeding on behalf of the debtor" and "remained as special counsel throughout the proceeding." 283 F.3d at 772. Here, the Court disqualified Defendants as counsel for Loehnert and Ayres in November 2014, long before the case settled in March 2016. (D.N. 53-3, PageID # 459, *see* D.N. 57-10) Thus, it is unclear whether the privity requirement is satisfied in this case.

Even if the privity requirement is met, however, res judicata does not apply here because there has been no final decision on the merits. This element requires the Court to determine whether the agreed order dismissing the prior suit with prejudice as settled qualifies as a final decision on the merits for purposes of res judicata.[2] In the Sixth Circuit, "[a] consent judgment, which has been freely negotiated by the parties and has been approved by the court, has the full effect of final judgment for purposes of [res judicata]." *Old Blast, Inc.*, 663 F. App'x at 457 (quoting *Blakely v. United States*, 276 F.3d 853, 866 (6th Cir. 2002)). A consent judgment is defined as "a contract acknowledged in open court and ordered to be recorded" that "binds the parties as fully as other judgments." *Judgment (2)*, Black's Law Dictionary (10th ed. 2014). The settlement agreement here, however, does not appear in the record of the prior case, nor does the

---

[2] The Court notes that a judge in this district has concluded that, under Kentucky law, a settlement and agreed order of dismissal with prejudice operate as a final adjudication on the merits for purposes of res judicata. *See Groupwell Int'l (HK) Ltd. v. Gourmet Express, LLC*, 277 F.R.D. 348, 356 (W.D. Ky. 2011). That conclusion is not dispositive here, however, where federal preclusion law applies. *See J.Z.G. Res., Inc.*, 84 F.3d at 213-14.

record show that it was approved or signed by the judge. The Sixth Circuit's consent-judgment rule is therefore inapposite.

The Sixth Circuit does not appear to have addressed whether an agreed order of dismissal following settlement acts as a final decision on the merits where the Court did not approve the settlement agreement.[3] A decision of the Eleventh Circuit is instructive, as it involved similar facts. In *Norfolk Southern Corp. v. Chevron, U.S.A., Inc.*, the district court entered a judgment of dismissal with prejudice after the parties executed a settlement agreement. 371 F.3d 1285, 1287 (11th Cir. 2004). In a subsequent suit between the parties' successors-in-interest, the district court granted summary judgment for the defendant, concluding that the plaintiff's claims were barred by the res judicata effect of the dismissal. *Id.* at 1287-88. The court of appeals reversed, holding that "where the parties stipulate to having a case dismissed, a somewhat modified form of *res judicata* applies to the written settlement agreement upon which such dismissal is predicated, if one exists." *Id.* at 1291. Thus, although the dismissal had res judicata effect, that effect was controlled by the settlement agreement the parties entered. *Id.* at 1288. The court reasoned that "[a] judgment dismissing an action with prejudice based upon the parties'

---

[3] At least one court within this circuit has held that a plaintiff's voluntary dismissal of the complaint with prejudice constitutes a final adjudication in the defendant's favor. *See Harris v. Tellico Servs., Inc.*, No. 3:13-CV-577-PLR-HBG, 2015 WL 2452404, at *2 (E.D. Tenn. May 21, 2015). The defendants here are not the same defendants who were sued in the prior suit, however. And the Sixth Circuit case that court cited in support of its holding is distinguishable on the same basis. *See Smoot v. Fox*, 340 F.2d 301, 303 (6th Cir. 1964) ("Dismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties."). Another court in this circuit has held that a case dismissed with prejudice by agreement of the parties or by order of the Court will serve as a judgment on the merits. *See Armco Steel Corp. v. United States*, No. 8242, 1974 WL 557, at *2 (S.D. Ohio Apr. 15, 1974). A close reading of that case suggests that its holding is limited to the tax context, however, *see id.* at 2-3, and the cases it cited in support applied the rule where the parties who agreed to dismiss the prior suit with prejudice were also parties to the present suit. *See Burns v. Fincke*, 197 F.2d 165, 165-66 (D.C. Cir. 1952); *Reynolds v. Int'l Harvester Co.*, 141 F. Supp. 371, 371 (N.D. Ohio 1955). These cases thus provide little guidance.

stipulation, unlike a judgment imposed at the end of an adversarial proceeding, receives its legitimating force from the fact that the parties consented to it." *Id.* The court determined that it should therefore "attempt to effectuate the parties' intent" in determining the res judicata effect of an order of dismissal based upon a settlement agreement.[4] *Id.* at 1289.

As the Court previously noted, the settlement agreement in the prior suit expressly provided that this malpractice action was "in no way settled, compromised, resolved[,] or affected in any way by" the agreement. (D.N. 57-9, PageID # 587-88) The Court is unable to conclude, based upon the parties' intent as reflected in the agreement, that the agreed order of dismissal entered following that settlement constitutes a final decision on the merits. *Cf. United States v. Armour & Co.*, 402 U.S. 673, 682 (1971) ("Because the defendant has, by the [consent] decree, waived his right to litigate the issues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver must be respected, and the instrument must be construed as it is written . . . ."). Therefore, res judicata does not bar Pinnacle from pursuing this action against Defendants.

### C.    Statute of Limitations

Defendants also argue that the one-year statute of limitations found in Ky. Rev. Stat. § 413.245 bars all of Pinnacle's claims. (D.N. 57-2, PageID # 487) Section 413.245 provides:

> [A] civil action, whether brought in tort or contract, arising out of any act or omission in rendering, or failing to render, professional services for others shall be brought within one (1) year from the date of the occurrence or from the date

---

[4] Other district courts within this circuit have found *Norfolk Southern Corp.* persuasive in similar contexts. *See Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Textron, Inc.*, No. 3:14 CV 2112, 2015 WL 1383632, at *3-4 (N.D. Ohio Mar. 25, 2015) (determining preclusive effect of consent judgment approving voluntary dismissal by looking to the intent of the parties as reflected in the settlement agreement); *Lucas v. JBS Plainwell, Inc.*, No. 1:11-cv-302, 2012 WL 12854880, at *2, *7 (W.D. Mich. Mar. 8, 2012) (referring to the parties' intent as the "key issue" in determining the preclusive effect of a prior class-action settlement).

when the cause of action was, or reasonably should have been, discovered by the party injured.

Ky. Rev. Stat. § 413.245. The Kentucky Supreme Court has explained:

> The statute of limitations in KRS 413.245 is actually two separate statutes of limitations: one, a statute limiting to "one year from the date of occurrence," and then a second statute providing a limit of "one year . . . from the date when the cause of action was, or reasonably should have been, discovered by the party injured," if that date is later in time.

*Michels v. Sklavos*, 869 S.W.2d 728, 730 (Ky. 1994). "[A] cause of action[5] is deemed to accrue in Kentucky where negligence and damages have both occurred, subject in certain kinds of actions to the additional requirement of discovery of the claim by the plaintiff." *Nw. Nat'l Ins. Co. v. Osborne*, 610 F. Supp. 126, 128 (E.D. Ky. 1985). "[F]ailure to appreciate the extent of one's eventual damages, because the injury initially appears to be slight, is not an excuse for failure to comply with the statute of limitations." *Id.* But "the use of the word 'occurrence' in KRS 413.245 indicates a legislative policy that there should be some definable, readily ascertainable event which triggers the statute." *Id.* Therefore, the statute does not begin to run until damages are fixed and non-speculative. *Broadbent*, 882 S.W.2d at 125-26.

The practice of law qualifies as a profession subject to the statute. *Sawaf v. Alred*, No. 15-108-DLB, 2016 WL 2755455, at *3 (E.D. Ky. May 11, 2016). The statute thus applies to claims that "clearly arise out of [Defendants' alleged] acts or omissions in rendering, or failing to render" legal services to Pinnacle. *See id.*

Defendants assert that the events alleged in Pinnacle's complaint took place well over one year before this suit was filed on May 13, 2015. (D.N. 57-2, PageID # 489-99; *see* D.N. 1) Pinnacle responds that its complaint was filed less than one year after Loehnert and Ayres left

---

[5] The statutory terms "occurrence" and "cause of action" are synonymous. *Alagia, Day, Trautwein & Smith v. Broadbent*, 882 S.W.2d 121, 125 (Ky. 1994).

Pinnacle, Pinnacle became aware of Defendants' improper conduct, and Pinnacle could begin to assess its damages. (D.N. 64, PageID # 644-45)

Each of Pinnacle's claims arises out of Defendants' legal representation of Pinnacle and alleged breach of fiduciary duties to Pinnacle owed as a result of the representation. (*See* D.N. 53, PageID # 352-72) Thus, the one-year statute of limitations in Ky. Rev. Stat. § 413.245 applies to Pinnacle's claims against Defendants. *See Sawaf*, 2016 WL 2755455, at *3. Pinnacle concedes the application of § 413.245 to its claims but argues that it filed suit within one year, as required. (*See* D.N. 64, PageID # 643-48)

According to the facts alleged in Pinnacle's complaint, Elliott told Loehnert and Ayres on May 16, 2014, "to just leave and breach their Agreement with Pinnacle, which they did." (D.N. 53, PageID # 355-56) The complaint further alleges that Loehnert and Ayres attempted to resign from Pinnacle effective May 30, 2014. (*Id.*, PageID # 356-57; D.N. 53-1, PageID # 413) Although it is not entirely clear from these alleged facts when Loehnert and Ayres resigned, it appears that they did not resign until May 16, 2014, at the earliest. And Pinnacle seeks damages for lost business, profits, opportunities, and goodwill (D.N. 53, PageID # 372), which Pinnacle could not have ascertained prior to the resignation. The statute did not begin to run until Pinnacle's damages were fixed and non-speculative. *See Broadbent*, 882 S.W.2d at 125-26. Thus, the statute did not begin to run until May 16, 2014, at the earliest, and Pinnacle filed suit on May 13, 2015, within one year of that date. (*See* D.N. 53, PageID # 355-57; D.N. 1) The Court therefore finds that Pinnacle filed suit within the one-year statute of limitations found in Ky. Rev. Stat. § 413.245. This finding is based upon the facts alleged in the complaint, which the Court must accept as true at this early stage. *See Directv, Inc.*, 487 F.3d at 476. In light of

this finding, the Court need not reach the question of whether the discovery rule tolls the statute of limitations. *See Broadbent*, 882 S.W.2d at 125.

### D. Legal Malpractice

In Count I of the complaint, Pinnacle asserts a legal-malpractice claim against all of the defendants. (D.N. 53, PageID # 359) "To state a claim for malpractice, a plaintiff must allege that (1) an attorney-client relationship existed; (2) the attorney failed to conform to the standard of care of a reasonably competent attorney; and (3) the attorney's negligence proximately caused damage to the client." *Gookin v. Altus Capital Partners, Inc.*, No. 05-179-JBC, 2006 WL 7132020, at *4 (E.D. Ky. Mar. 24, 2006) (citing *Todd v. Wilkey*, No. 2003-CA-002639-MR, 2004 WL 2984875, at *4 (Ky. Ct. App. Dec. 23, 2004)).

To the extent the complaint alleges legal malpractice during the Wells Fargo litigation, it contains insufficient factual matter to state a plausible claim. The Wells Fargo litigation resulted in a confidential settlement agreement under which Pinnacle, Loehnert, and Ayres were held jointly and severally liable to Wells Fargo for an undisclosed amount. (D.N. 53, PageID # 353) At best, Pinnacle has pleaded sufficient factual matter as to the first element of a legal-malpractice claim, as Defendants represented Pinnacle, Loehnert, and Ayres in the Wells Fargo lawsuit. (*Id.*, PageID # 352-53) However, as to the second element of a legal-malpractice claim, Pinnacle simply states that Defendants "breached their duties to Pinnacle by failing to meet their duties of care and loyalty to Pinnacle, to exercise the ordinary care of a reasonably competent attorney in the same or similar circumstances, and to at all times act in Pinnacle's best[] interests and to the benefit of Pinnacle." (*Id.*, PageID # 360) Such a threadbare recital of an element of a cause of action is insufficient. *Iqbal*, 556 U.S. at 678. While Pinnacle does list more specific actions of Defendants, these allegations pertain to alleged unethical conduct during and after the

litigation and do not speak to the competence of the representation or the resulting settlement of the Wells Fargo lawsuit. (*See* D.N. 53, PageID # 360-62) Even if this list constituted sufficient factual matter to support the second element of a legal-malpractice claim, Pinnacle has still failed to plead any factual matter to support the third element of a legal-malpractice claim. Aside from vague references to "significant economic injury, detriment[,] and damage," Pinnacle has alleged no facts indicating that Defendants' negligence adversely affected Pinnacle in the Wells Fargo litigation. (*See id.*, PageID # 362)

Moreover, Pinnacle attempts to rest its legal-malpractice claims upon violations of the Kentucky Supreme Court Rules of Professional Conduct, including Ky. Sup. Ct. R. 3.130(1.6)(a), 3.130(1.7), and 3.130(1.9)(a). (*Id.*, PageID # 359) The Kentucky Court of Appeals, however, has noted the absence of any authority supporting a cause of action based on violations of the Rules of Professional Conduct. *Rose v. Winters, Yonker & Rousselle, P.S.C.*, 391 S.W.3d 871, 873-74 (Ky. Ct. App. 2012). The court also noted in *Hill v. Willmott* that "[the] sole remedial method for a violation of the Code [of Professional Responsibilities] is the imposition of disciplinary measures after a hearing by" the state bar association. 561 S.W.2d 331, 333 (Ky. Ct. App. 1978). The Court observes, as did the court in *Rose*, that the Preamble to the Rules states that violation of a rule "should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached." Ky. Sup. Ct. R. 3.130 § XXI; 391 S.W.3d at 874.[6] Instead, the Kentucky Supreme Court "has

---

[6] Pinnacle points to other language in the Preamble explaining that "since the Rules do establish standards of conduct by lawyers, a lawyer's violation of a Rule may be evidence of breach of the applicable standard of conduct." Ky. Sup. Ct. R. 3.130 § XXI. The court in *Rose* did not interpret this language, however, and it does not alter the Court's conclusion. The Preamble states that a violation of a rule may be evidence of breach of the applicable standard of conduct, but nowhere does it state that a rule may create a standard of conduct, the breach of which entitles the plaintiff to recover. *See id.* And Pinnacle has not linked particular rules to the

the sole authority to admit and discipline attorneys." *Grigsby v. Ky. Bar Ass'n*, 181 S.W.3d 40, 42 (Ky. 2005). Therefore, even if the facts alleged are accepted as true, and an attorney-client relationship existed at least through the final Wells Fargo settlement payment on June 4, 2014 (D.N. 53, PageID # 353), Pinnacle still fails to state a plausible claim for relief. *See Taylor v. Jackson Lewis LLP*, No. 3:13CV1088-S, 2014 WL 4494254, at *4 (W.D. Ky. Sept. 10, 2014) ("To the exten[t] that [the plaintiff] urges a claim for such an alleged violation [of the rules of professional conduct], the allegation fails to state a claim upon which relief can be granted."); *cf. Caesars Entm't Operating Co. ex rel. Harrahs Operating Co. v. Johnson*, No. 3:13-CV-00620-CRS, 2015 WL 5020695, at *6-7 (W.D. Ky. Aug. 24, 2015) (noting that the plaintiff needed to point the Court elsewhere than the rules of professional conduct in order to establish a fiduciary relationship for purposes of a breach-of-fiduciary-duty claim). Thus, Count I of the complaint will be dismissed.

### E. Breach of Fiduciary Duty

Count II of the complaint alleges a breach-of-fiduciary-duty claim against all of the defendants. (*Id.*, PageID # 362) "A breach of fiduciary duty claim[] requires that a plaintiff allege that (1) the defendant owes a fiduciary duty to the plaintiff; (2) the defendant breached that duty; and (3) the plaintiff suffered damages as a result of that breach." *Pixler v. Huff*, No. 3:11-CV-00207-JHM, 2012 WL 3109492, at *9 (W.D. Ky. July 31, 2012). "The attorney-client relationship is a fiduciary relationship that subjects the attorney to the duties of honesty, loyalty, and good faith." *Abbott v. Chesley*, 413 S.W.3d 589, 600 (Ky. 2013).

---

reasonably-competent-attorney standard applicable here. *See Gookin*, 2006 WL 7132020, at *4. The Court's conclusion is further supported by the Preamble's warning that the rules "are not designed to be a basis for civil liability." Ky. Sup. Ct. R. 3.130 § XXI.

Pinnacle alleges that its attorney-client relationship with Defendants existed from the time the Wells Fargo lawsuit began until at least June 4, 2014, when the final settlement payment was due.  (D.N. 53, PageID # 353)  Pinnacle further alleges that Defendants breached their fiduciary duties by assuming an adverse position to Pinnacle, encouraging Loehnert and Ayres to breach their contract with Pinnacle, and starting a company to compete against Pinnacle.  (*Id.*, PageID # 354-55, 363-64)  Lastly, Pinnacle alleges damages and causation, as Pinnacle states that it "incurred significant economic injury, detriment[,] and damage in an amount to be proven at trial" "[a]s a direct and proximate result of the Defendants' acts and omissions."  (*Id.*, PageID # 365)  At this stage, the facts contained in the complaint, accepted as true, are sufficient to state a plausible claim for breach of fiduciary duty.[7]  *See Kirsch v. Dean*, No. 3:16-cv-00299-CRS, 2016 WL 4536444, at *4 (W.D. Ky. Aug. 30, 2016) (denying motion to dismiss breach-of-fiduciary-duty claim where fiduciary duty existed and the plaintiff alleged facts showing the defendant's breach of his fiduciary obligations).

### F.    Fraudulent Concealment

In Count III of the complaint, Pinnacle asserts a fraudulent-concealment claim.  (D.N. 53, PageID # 365)  "When the plaintiffs plead claims which sound in fraud, those claims are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b), which provides that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'"  *Bosch v. Bayer Healthcare Pharm., Inc.*, 13 F. Supp. 3d 730, 735 (W.D. Ky. 2014).  Rule 9(b)'s heightened pleading standard applies to fraud-by-omission claims.  *See Republic Bank & Tr. Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 255-56 (6th Cir. 2012).

---

[7] Federal Rule of Civil Procedure 9(b)'s heightened pleading standard does not apply to breach-of-fiduciary-duty claims.  *Helm v. Ratterman*, No. 3:16-cv-00771-TBR, 2017 WL 2800865, at *11 (W.D. Ky. June 28, 2017).

> A plaintiff asserting a fraudulent concealment (or fraud by omission) claim under Kentucky law must establish four elements: "(1) the defendant had a duty to disclose the material fact at issue; (2) the defendant failed to disclose the fact; (3) the defendant's failure to disclose the material fact induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a consequence."

*House v. Bristol-Myers Squibb Co.*, No. 3:15-cv-00894-JHM, 2017 WL 55876, at *8 (W.D. Ky. Jan. 4, 2017) (quoting *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011)). To satisfy Rule 9(b), the plaintiff "must plead: (1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [the defendants] obtained as a consequence of the alleged fraud." *Id.* (quoting *Republic Bank & Tr. Co.*, 683 F.3d at 255-56).

The complaint alleges various actions that Defendants took against Pinnacle, including encouraging Loehnert and Ayres to breach their agreement with Pinnacle, starting a competing surety company, interfering with Pinnacle's agreement with Loehnert and Ayres, sending Pinnacle a demand letter on behalf of Loehnert and Ayres, continuing to represent Loehnert and Ayres despite their conflict of interest, filing suit against Pinnacle, forcing Pinnacle to move for their disqualification, and forcing Pinnacle to file this action. (D.N. 53, PageID # 365-67) According to Pinnacle, Defendants failed to fully and properly disclose these actions. (*Id.*, PageID # 367) The Court concludes that while Pinnacle alleged sufficient facts to support the first two elements of its claim under Rule 9(b), Pinnacle failed to allege facts showing the latter two elements: the manner in which the alleged omissions were misleading and what Defendants obtained as a consequence of the alleged fraud. Therefore, Pinnacle has failed to state a plausible claim for relief under Rule 9(b).

Nor has Pinnacle pleaded sufficient facts to support all of the elements of a fraudulent-concealment claim under Kentucky law. In satisfaction of the first element, Pinnacle points to its

attorney-client relationship with Defendants as the source of Defendants' duty to disclose. (*Id.*, PageID # 365) Pinnacle also satisfies the second element by alleging that Defendants failed to disclose that they encouraged Loehnert and Ayres to breach their agreement with Pinnacle, started a competing company, and proceeded to represent Loehnert and Ayres despite their conflict of interest. (*Id.*, PageID # 365-67) Pinnacle further alleges that it incurred significant economic injury as a result, satisfying the fourth element. (*Id.*, PageID # 367) However, Pinnacle has not pleaded sufficient facts showing that Defendants' failure to disclose material facts induced Pinnacle to act. Pinnacle states generally that it "relied to its detriment on Defendants" (*id.*), but it does not allege any actions or omissions that Defendants' failure to disclose specifically induced. Therefore, Pinnacle has failed to state a plausible claim for relief, and the fraudulent-concealment claim in Count III of the complaint must be dismissed.

### G. Intentional Interference with Contractual Relationship

Count IV of the complaint asserts a claim for intentional interference with a contractual relationship. (D.N. 53, PageID # 368)

> A claim for tortious interference with contract under Kentucky law requires: "(1) the existence of a contract; (2) defendant's knowledge of this contract; (3) that it intended to cause its breach; (4) its conduct caused the breach; (5) this breach resulted in damages; and (6) defendant had no privilege or justification to excuse its conduct."

*Brake Parts, Inc. v. Lewis*, Nos. 09-132-KSF, 10-212-KSF, 2010 WL 3470198, at *9 (E.D. Ky. Aug. 31, 2010) (quoting *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, No. Civ.A. 04-84-KSF, 2006 WL 980732, at *1 (E.D. Ky. Mar. 7, 2006)).

To support this claim, Pinnacle points to the employment contract it had with Loehnert and Ayres. (D.N. 53, PageID # 368) Defendants represented Pinnacle, Loehnert, and Ayres in a lawsuit brought by Wells Fargo. (*Id.*, PageID # 352-53) Wells Fargo brought that lawsuit after

Loehnert and Ayres ended their employment with Wells Fargo to work for Pinnacle. (*Id.*, PageID # 352) Taken as true, these facts make it at least plausible that Defendants knew about the contractual relationship between Pinnacle and Loehnert and Ayres. Pinnacle also alleges that Defendants "[p]lant[ed] the seed" for, directed, and encouraged Loehnert and Ayres to breach their contract with Pinnacle and assisted both with proposing a premature separation from Pinnacle. (*Id.*, PageID # 368) Defendant Elliott allegedly told Loehnert and Ayres that they should leave Pinnacle prematurely given how well they could do financially on their own. (*Id.*, PageID # 354) Pinnacle has further alleged that Loehnert and Ayres left Pinnacle after one year in breach of their three-year contract. (*Id.*, PageID # 355-57)

The Court concludes that these alleged facts are sufficient at this stage to show that Defendants intended to cause the breach and that their conduct did in fact cause the breach. Finally, Pinnacle has pleaded sufficient facts to show that it suffered damages as a result of the breach, including two years of lost business, profits, and opportunities in an amount of at least $744,000. (*Id.*, PageID # 359) In sum, the facts alleged in the complaint, accepted as true, are sufficient to state a plausible claim for intentional interference with contractual relations. *See Brake Parts, Inc.*, 2010 WL 3470198, at *9 (denying motion to dismiss interference claim where complaint alleged the existence of a contract, the defendants' knowledge of the contract, a breach of the contract, actions by the defendants that facilitated the breach, and the plaintiff's damages). The Court will therefore deny the motion to dismiss with respect to Pinnacle's claim for intentional interference with a contractual relationship.

### H.     Civil Conspiracy

Pinnacle also asserts a claim for civil conspiracy against all defendants. (D.N. 53, PageID # 370) "In Kentucky, 'civil conspiracy is not a free-standing claim; rather, it merely

provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort.'" *Reed v. Gulf Coast Enters.*, No. 3:15-cv-00295-JHM, 2016 WL 79998, at *10 (W.D. Ky. Jan. 6, 2016) (quoting *Christian Cty. Clerk ex rel. Kem v. Mortg. Elec. Registration Sys., Inc.*, 515 F. App'x 451, 458-59 (6th Cir. 2013)). "As civil conspiracy is not an independent tort, one who cannot be liable as a matter of law for the underlying tort cannot be liable for conspiracy to commit that tort." *Id.*

"Under Kentucky law, a claim for civil conspiracy requires 'a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means.'" *Vivid Impact Co. v. Ellis*, No. 3:17-cv-509-JHM, 2017 WL 5505024, at *5 (W.D. Ky. Nov. 16, 2017) (quoting *Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co.*, 277 S.W.3d 255, 261 (Ky. Ct. App. 2008)). "The elements of a civil conspiracy are: (1) an agreement or combination, (2) that is unlawful or corrupt, (3) entered into by two or more persons, (4) for the purpose of accomplishing an unlawful goal." *Id.*

The complaint alleges that Defendants made an unlawful agreement among themselves "to engage in, substantially assist[,] or encourage concerted action with a common design, and engaged in tortious and improper conduct in violation of Pinnacle's rights." (D.N. 53, PageID # 371) Specifically, Pinnacle alleges that Defendants assisted or encouraged fraudulent concealment, breach of fiduciary duty, legal malpractice, and intentional interference with a contractual relationship. (*Id.*) As discussed in Sections III.E and III.G above, Pinnacle has alleged sufficient facts to state claims for breach of fiduciary duty and intentional interference with a contractual relationship. Given that civil conspiracy is merely a theory under which Pinnacle may recover from multiple defendants for these underlying torts, *see Reed*, 2016 WL 79998, at *10, this civil-conspiracy claim is sufficiently pleaded insofar as it alleges a conspiracy

to breach fiduciary duties and to intentionally interfere with a contractual relationship. *See Vivid Impact Co.*, 2017 WL 5505024, at *5 (listing four elements above and denying motion to dismiss civil-conspiracy claim where complaint adequately alleged that the defendants conspired to commit the underlying tort).

## I.     Aiding and Abetting Breach of Fiduciary Duty

In Count VI of the complaint, Pinnacle asserts that Defendants aided and abetted each other, as well as Loehnert and Ayres, in breaching fiduciary duties owed to Pinnacle. (D.N. 53, PageID # 371-72)  Defendants cite *Peoples Bank of Northern Kentucky, Inc. v. Crowe Chizek & Co.* for the proposition that "Kentucky law has never recognized a civil cause of action for aiding and abetting a breach of fiduciary duty."  277 S.W.3d at 260.  However, the Kentucky Court of Appeals in *Peoples Bank* did not reconcile its assertion with the Kentucky Supreme Court's earlier decision in *Steelvest, Inc. v. Scansteel Service Center, Inc.*, where the court recognized such a claim. *See* 807 S.W.2d 476, 485-86 (Ky. 1991).  The Court agrees with the Eastern District of Kentucky that the Kentucky Supreme Court might not follow the holding in *Peoples Bank. See Gundaker/Jordan Am. Holdings, Inc. v. Clark*, No. 04-226-JBC, 2008 WL 4550540, at *4 (E.D. Ky. Oct. 9, 2008).  The Court will therefore "continue to interpret Kentucky law as permitting claims for aiding and abetting a breach of fiduciary duty." *Id.*

"[A] person who knowingly joins with or aids and abets a fiduciary in an enterprise constituting a breach of the fiduciary relationship becomes jointly and severally liable with the fiduciary for any profits that may accrue." *Vivid Impact Co.*, 2017 WL 5505024, at *3 (quoting *Steelvest, Inc.*, 807 S.W.2d at 485).  "To prevail, a plaintiff must prove the following elements: (1) the existence and breach of a fiduciary relationship; (2) the defendant gave the breaching party 'substantial assistance or encouragement' in effectuating the breach; and (3) the defendant

knew that the party's conduct breached that fiduciary duty." *Id.* (quoting *Insight Ky. Partners II, L.P. v. Preferred Auto. Servs., Inc.*, 514 S.W.3d 537, 546 (Ky. Ct. App. 2016)).

The complaint contains sufficient facts to state a breach-of-fiduciary-duty claim against Defendants. *See supra* Section III.E. However, the complaint contains no facts suggesting that Defendants aided and abetted each other in the breach of their respective fiduciary duties. Specifically, Pinnacle fails to plead facts alleging that any of the defendants assisted or encouraged another defendant in effectuating the breach. Pinnacle's statement in the complaint that Defendants aided and abetted each other (D.N. 53, PageID # 371) will not suffice, as a threadbare recital of an element of a cause of action. *See Iqbal*, 556 U.S. at 678. Therefore, Pinnacle has not sufficiently stated a claim that Defendants aided and abetted each other in the breach of their fiduciary duties.

Pinnacle may still assert a claim, however, that Defendants aided and abetted Loehnert and Ayres in breaching their fiduciary duties. Such a claim requires sufficient factual allegations that Loehnert and Ayres breached their fiduciary duties to Pinnacle. *See Vivid Impact Co.*, 2017 WL 5505024, at *3. "A breach of fiduciary duty claim[] requires that a plaintiff allege that (1) the defendant owes a fiduciary duty to the plaintiff; (2) the defendant breached that duty; and (3) the plaintiff suffered damages as a result of that breach." *Pixler*, 2012 WL 3109492, at *9.

> As a general rule, the Court may conclude that a fiduciary relationship exists if it is "founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking."

*Id.* (quoting *Abney v. Amgen, Inc.*, 443 F.3d 540, 550 (6th Cir. 2006)).

Pinnacle alleges that Loehnert and Ayres owed fiduciary duties to Pinnacle and breached those duties. (D.N. 53, PageID # 371-72) Indeed, the employment agreement Pinnacle had with

Loehnert and Ayres required them to "manage, direct[,] and conduct the business and affairs of Pinnacle," "devote [their] entire productive time, ability[,] and attention to the business of Pinnacle," and adhere to the provisions of a confidentiality agreement. (D.N. 53-1, PageID # 397)[8] Loehnert and Ayres thus owed fiduciary duties to Pinnacle under Kentucky law. *See Invesco Institutional (N.A.), Inc. v. Johnson*, 500 F. Supp. 2d 701, 709 (W.D. Ky. 2007) (finding that the defendants owed fiduciary duties where they were given substantial control over the plaintiff's business operations as well as access to confidential information). Pinnacle further alleges that Loehnert and Ayres breached their fiduciary duties by prematurely leaving Pinnacle and starting a business to compete with Pinnacle, both in violation of their employment agreement. (D.N. 53, PageID # 355-57) These allegations are sufficient at this stage to show that Loehnert and Ayres breached their fiduciary duties to Pinnacle. *See Kirsch*, 2016 WL 4536444, at *4 (denying motion to dismiss breach-of-fiduciary-duty claim where fiduciary duty existed and the plaintiff alleged facts showing the defendant's breach of his fiduciary obligations).

Additionally, Pinnacle sufficiently alleges that Defendants provided Loehnert and Ayres with "substantial assistance or encouragement" in breaching their fiduciary duties. *See Vivid Impact Co.*, 2017 WL 5505024, at *3. For instance, as previously noted, Defendant Elliott allegedly told Loehnert and Ayres to leave Pinnacle prematurely given how well they could do financially on their own, while Defendant Stigger helped prepare, form, and organize L.A. Surety, the competing company formed by Loehnert and Ayres. (D.N. 53, PageID # 354-55) Furthermore, Defendants allegedly assisted Loenhert and Ayres with their resignation from Pinnacle. (*Id.*, PageID # 356) Finally, Pinnacle alleges that Defendants offered this

---

[8] The Court may consider exhibits attached to Pinnacle's complaint in ruling on a motion to dismiss. *See Cotita v. Verizon Wireless*, 54 F. Supp. 3d 714, 717 (W.D. Ky. 2014).

encouragement and assistance knowing that Loehnert and Ayres's conduct breached their fiduciary duties to Pinnacle. (*Id.*, PageID # 371) It is at minimum plausible that Defendants had this knowledge, given that they knew of the three-year contract Pinnacle had with Loehnert and Ayres. *See supra* Section III.G. (*See* D.N. 53, PageID # 352-53) Thus, Pinnacle alleges sufficient facts in support of its claim that Defendants aided and abetted Loehnert and Ayres in breaching their fiduciary duties, and this claim will survive the motion to dismiss.

### J.     Constructive Trust/Accounting

Count VII of Pinnacle's complaint contains a claim for constructive trust/accounting. (*Id.*, PageID # 372) Pinnacle states that it is "entitled to a full accounting and constructive trust to be imposed against Defendants on all assets, profits, gains[,] and advantages derived from Defendants' wrongful activities, as well as all damages sustained by Pinnacle as a result thereof." (*Id.*)

#### 1.     Constructive Trust

"When legal title to property has been acquired or held under such circumstances that the holder of that legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Hurley v. Byassee*, No. 5:08-cv-28, 2009 WL 3806795, at *7 (W.D. Ky. Nov. 12, 2009) (quoting *Keeney v. Keeney*, 223 S.W.3d 843, 849 (Ky. Ct. App. 2007)). Courts impose a constructive trust "where property 'has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it.'" *Id.* (quoting *Kaplon v. Chase*, 690 S.W.2d 761, 763 (Ky. Ct. App. 1985)). "A constructive trust may arise where it is demonstrated that 'the holder of the legal title obtained it through fraud, misrepresentation, concealments, undue influence, duress, or some other wrongful act whereby another is deprived of the title to his property.'" *Id.* (quoting *Lowe v. Lowe*, 229

S.W.2d 442, 443 (Ky. 1950)). The plaintiff "need not demonstrate actual fraud." *Id.* "The fraud may occur in any form of unconscionable conduct; taking advantage of one's weaknesses or necessities, or in any way violating equity in good conscience." *Kaplon*, 690 S.W.2d at 763. Kentucky law requires "the party seeking the imposition of a trust to establish a 'confidential relationship' with the party upon whom the trust is to be imposed." *Keeney*, 223 S.W.3d at 849. "[T]he existence of the relationship in any particular case is to be determined by the facts established." *Id.* at 849-50 (quoting *Henkin, Inc. v. Berea Bank & Tr. Co.*, 566 S.W.2d 420, 423 (Ky. Ct. App. 1978)).

A constructive trust is "a common-law remedy in equity." *In re Omegas Grp., Inc.*, 16 F.3d 1443, 1449 (6th Cir. 1994). All equitable remedies "require[] insufficiency of legal remedies." *Holley Performance Prods., Inc. v. Keystone Auto. Operations, Inc.*, No. 1:09-cv-00053-TBR, 2009 WL 3613735, at *3 (W.D. Ky. Oct. 29, 2009).

The complaint alleges that Pinnacle paid Defendants $32,650 for their legal representation in the Wells Fargo litigation. (D.N. 53, PageID # 352-53) In addition, the complaint alleges that, during the course of the representation, Defendants took various actions adverse to Pinnacle. (*Id.*, PageID # 353-58) However, Pinnacle failed to allege that legal remedies would be insufficient in this case. Therefore, its constructive-trust claim fails and must be dismissed. *Cf. Holley Performance Prods, Inc.*, 2009 WL 3613735, at *3-4 (allowing claim for equitable remedy to proceed because claimant alleged facts in its complaint showing that legal remedies were inadequate).

### 2. Accounting

"An accounting is an equitable remedy and is . . . defined as an 'adjustment of the accounts of the parties and a rendering of a judgment for the balance ascertained to be due.'"

*Watkins v. Tr. Under Will of William Marshall Bullitt ex rel. PNC Bank, N.A.*, No. 3:13-cv-1113-DJH-CHL, 2017 WL 3710088, at *7 (W.D. Ky. Aug. 28, 2017) (quoting *Gentry v. Coffey*, No. 2006-CA-002293-MR, 2007 WL 4465573, at *1 (Ky. Ct. App. Dec. 21, 2007)). "An accounting claim is based on a theory of unjust enrichment because an accounting 'mandat[es] the return of any benefit received as a result of a breach of fiduciary duty.'" *Id.* (quoting *Gentry*, 2007 WL 4465573, at *1). "To be entitled to a court-ordered accounting, [Pinnacle] must demonstrate that [Defendants] owe[] [it] money." *See id.* "An accounting is considered 'an extraordinary remedy' that 'is available only when legal remedies are inadequate.'" *Id.* (quoting *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972)).

A plaintiff bringing a claim for an accounting has the burden "to allege there is no adequate legal remedy." *Holley Performance Prods., Inc.*, 2009 WL 3613735, at *4. Pinnacle has not alleged that a legal remedy is inadequate in this case. Thus, its accounting claim also fails and must be dismissed.

## IV.    CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)    Defendants' motion to file reply memorandum in excess of fifteen pages (D.N. 68) is **GRANTED**.

(2)    Defendants' motion to dismiss (D.N. 57) is **GRANTED** in part and **DENIED** in part. Pinnacle's legal-malpractice (Count I), fraudulent-concealment (Count III), constructive-trust (Count VII), and accounting (Count VII) claims are **DISMISSED**. Pinnacle's breach-of-fiduciary-duty (Count II) and intentional-interference-with-contractual-relationship (Count IV)

claims may proceed. Pinnacle's civil-conspiracy claim (Count V) may proceed to the extent that it alleges a conspiracy to breach fiduciary duties and to intentionally interfere with a contractual relationship. Pinnacle's aiding-and-abetting claim (Count VI) may proceed to the extent that it alleges that Defendants aided and abetted Loehnert and Ayres in breaching their fiduciary duties.

    (3)     Defendants' motion to stay discovery (D.N. 58) is **DENIED** as moot.

    (4)     This matter is **REFERRED** to Magistrate Judge Colin H. Lindsay for a status conference.

March 27, 2018

**David J. Hale, Judge**
**United States District Court**